Argued 9 July, decided 6 August, 1907.

## COLUMBIA LAND CO. *v.* VAN DUSEN INVEST. CO.

11 L. R. A. (N. S.) 287; 91 Pac. 469.

SILENCE AS AN ESTOPPEL—WANT OF RESULTING INJURY.

1. The mere silence of a party as to the location of the boundary of his property, or his refusal to state whether or not he has had a map made showing certain lines as dividing his property from that of his neighbor, does not create an estoppel against his proving the true location of such line.

NAVIGABLE WATERS—DIVISION OF ADJOINING FRONTAGE.*

2. A proper division of water frontage along a navigable stream requires that each owner shall have a proportionate share, and the various rules adopted by different courts have that purpose.

Where the shore line is substantially straight and a government pier line has been established in a wide river subject to high tides and having a deep channel for ocean vessels, it will be equitable to divide adjoining frontages by the line from a common line at the shore perpendicular to such pier line.

COSTS IN EQUITY.

3. In equity the costs and disbursements may be apportioned between the parties as the particular circumstances may render appropriate.

*NOTE.—See extensive note in 21 L. R. A. 766, The Division of Water Front, Alluvian and Flats Between Adjoining Riparian Owners.    REPORTER.

From Clatsop: THOMAS A. MCBRIDE, Judge.

Statement by MR. JUSTICE EAKIN.

This is a suit by the Columbia Land & Investment Co. against the Van Dusen Investment Co. to establish the line dividing the water frontage between two shore owners. There was a decree for plaintiff, and defendant appeals. The upland bordering on the south shore of the Columbia River, owned by both plaintiff and defendant, is part of the Henry Marlin donation land claim. The plaintiff and defendant own in common the tidelands and water frontage (except that they have sold and conveyed portions thereof) in front of the shore line, beginning at a point in the meander line of the river where it is intersected by the division line between the Town of First Addition to Van Dusen's Astoria and the Town of Alderbrook; thence along said meander line to its intersection with the section line between sections 2 and 3, township 8 N., range 9 W., W. M.; thence northeasterly along said meander line to a point therein 736.2 feet distant on a straight line from said intersection. Plaintiff owns the tide land and water frontage in front of the shore line from that point easterly, and the line in dispute is the line which will divide the water front from this point of shore division. Plaintiff and defendant have heretofore jointly conveyed to Hume and others from such common holding all of such water frontage lying west of the following line, viz.: Beginning at a point 345.1 feet north 40 deg. 45 min. east from a point on the section line between sections 2 and 3, 50 feet north of the corner common to sections 2, 3, 10, and 11, and running thence north 10 deg. 12 min. west to the pier head line. Defendant claims that the dividing line should extend due north from the shore point of division; plaintiff claiming that it should be a line from the shore point of division at right angles to the pier head line.

REVERSED.

For appellant there was a brief over the name of *Fulton Bros.*, with an oral argument by *Mr. George Clyde Fulton.*

For respondent there was a brief with an oral argument by *Mr. John Frank Hamilton.*

Opinion by MR. JUSTICE EAKIN.

Attention is called to what appears to be an error made by the party who drew the findings and decree for the trial court. We find no data from which the lower court determined the angles of the shore line of plaintiff and defendant, and it is incorrectly expressed, viz., plaintiff's shore line base as 58 deg. north of east undoubtedly was intended as north 58 deg. east, the perpendicular to which is north 32 deg. west; and the same as to the defendant's shore line base, found as 48 deg. north of east, the perpendicular to which is north 42 deg. west, and the court's conclusion therefrom that the division line between plaintiff and defendant is 53 deg. west of north undoubtedly is a mistake, and was intended as north 37 deg. west, which bisects the angle between the said two perpendiculars. By this correction the finding of the court is intelligible. Otherwise the court gives to the plaintiff an angle of 26 deg. 12 min. greater than it asks.

1. It is not necessary to pass upon the question whether or not the defendant acquired, by adverse possession, title to any of the water front west of the east line of the property conveyed to Hume, as none of it is in dispute here, and can have no bearing upon plaintiff's right east of such line. Plaintiff's silence as to its claim that the division line between plaintiff and defendant should deviate from a due north course, or whether or not it used or had a map made, showing recognition of a due north line of division, does not preclude plaintiff now from proving the true line, as there has been no conduct amounting to estoppel. Defendant's claim that the various city plats of Astoria recognize the division of the water front upon north and south lines is without force. Each shore owner, in platting his land into lots and blocks, has platted the same approximately perpendicular with the shore, and in all but one case this results in extending such division lines due north into the water front. Although the general course

of the shore line is south of west, yet it is not regular, and, as to any one plat, the exterior lines thereof are practically perpendicular to the shore, and no conflicts between them have resulted. The general shore line of Alderbrook is east and west. As to Adair's plat, several blocks at the exterior lines are perpendicular to the shore line. The same is true of McClure's plat, and Shively's Astoria is laid out parallel with the shore, though not north and south, and the water front is divided at the same angle, while the shore line of the Henry Marlin claim extends more abruptly to the northeast.

2. A proper division in all cases is that each shore owner shall have a proportionate share of the deep-water frontage, and the rules adopted by the courts in relation thereto are with that end in view: 4 Am. & Eng. Enc. Law (2 ed.), 828; *Deerfield* v. *Pliny Arms,* 17 Pick 41 (28 Am. Dec. 276); *Blodgett Lum. Co.* v. *Peters,* 87 Mich. 498 (49 N. W. 917: 24 Am. St. Rep. 175); *Williams* v. *Lane,* 87 Wis. 152 (58 N. W. 77). The difference in such rules, as announced by different courts, is evidently due to the varying conditions in each case more than to the diversity of opinion as to equitable methods. The rule applicable to property situated in a cove, as adopted in *Rust* v. *Boston Mill Corp.* 6 Pick. 158, followed in several states, and relied upon by defendant here, is fair and equitable in cases where it can be applied, but will not apply here for the reason that this shore cannot properly be considered a cove. The headlands are probably four miles apart, and, being projections at the extremes of a long and irregular shore line, make such a basis of division impracticable: *Thornton* v. *Grant,* 10 R. I. 477 (14 Am. Rep. 701). Neither is it practicable to take the current of the stream as the basis from which to determine the division line. The township along the front of which Astoria is situated is a peninsula, extending into the river, having sheltered bodies of water on either side called bays. In front of the peninsula the river is very wide, probably three or four miles, the tide rising nine or more feet, and therefore we consider that the line of deep water frontage should be the basis

of apportionment, being the basis adopted for division of water frontage in lakes and tide water. This will not conflict with *Montgomery* v. *Shaver,* 40 Or. 244 (66 Pac. 923), as the situation is entirely different; but, taking the line of deep water as the basis of division instead of the thread of the stream, the result will be the same. In *Aborn* v. *Smith,* 12 R. I. 370, 372, it is said: "The problem here is to define water fronts in regard to a harbor line, not to divide flats or alluvion. The establishment of a harbor line, we have held, amounts to an implied permission to the riparian proprietors within it to fill out to it. The question is: How fill out to it? We answer, fill straight out to it. The owners of the upland are impliedly permitted to carry the upland forward to the harbor line so that each owner will occupy the part which is abreast his own land. There may be exceptional cases where the shore or the harbor line is so peculiar that permission to fill straight out cannot be applied. Perhaps it cannot be implied at the elbow which we have mentioned in the shore, where the harbor line diverges from a direct course. If there are several estates there, it cannot. The mode of filling in that case must be varied. But the variation ought to be limited by the necessity for it. * * It follows that the dividing line between the water fronts here, in case the parties have not established one for themselves, is a line drawn from the shore end of the dividing line of the upland to the harbor line so as to intersect it at right angles. This rule is analogous to the rule laid down in *Gray* v. *Deluce,* 5 Cush. 9." See, also, *Williams* v. *Lane,* 87 Wis. 152 (58 N. W. 77).

In the present case the government of the United States has established a pier head line at deep water adjacent to this property, and we believe a proper and equitable division of such deep water frontage will be to draw a line from such pier head line at right angles thereto to meet the division line between plaintiff and defendant at the shore. This is the rule adopted in 12 R. I. 370, above quoted. The government pier head line established in 1890 appears to have an angle in front of plain-

tiff's property at its intersection with the section line between sections 2 and 3 extended, and might thus work an inequality of division, as suggested in *Aborn* v. *Smith,* 12 R. I. 370, 372; and in such a case a general course of the pier head line should be taken: 4 Am. & Eng. Enc. Law (2 ed.), 828. However, the government in 1903 established a new pier head line in front of these properties, which appears to be straight, and therefore should control; and the decree will be modified to the extent that said division line shall be extended from the point of division at the shore in a course at right angles to the government pier head line established in 1903 to the intersection of the west line of the property conveyed by plaintiff and defendant jointly to Hume, and thence north 10 deg. 12 min. west on said west line of the Hume property to the said pier head line. As the record does not disclose the course of the pier head line established in 1903, we are unable to fix the course of division line between plaintiff and defendant therefrom.

The cause will therefore be remanded to the lower court to ascertain the course of the government pier head line established in 1903, to establish the division line therefrom between plaintiff and defendant, as above indicated, and to enter decree thereon.

3. Neither party shall recover costs on this appeal.

MODIFIED.