Argued March 31, decided June 8, 1909.

## OLIVER v. KLAMATH LAKE NAV. CO.

[102 Pac. 786.]

NAVIGABLE WATERS—CONVEYANCES—RIPARIAN RIGHTS.

1. Where defendant's remote grantor platted land situated on a navigable lake and river, and defendant thereafter acquired certain lots lying north of a certain street and extending into the water, defendant did not acquire any riparian rights south of the street, the original grantor and his successors retaining such rights, and hence defendant could not obstruct the lake or river south of the street to the injury of a riparian owner.

NAVIGABLE WATERS — NATURAL WATER COURSES — OBSTRUCTION — ACTIONS—DAMAGES.

2. Obstructions to navigation, unless legally authorized, are a nuisance, for the maintenance of which the person causing it is liable in damages to one specially injured thereby, or which he may enjoin or have abated.

NAVIGABLE WATERS—OBSTRUCTION—RIGHT TO INJUNCTION.

3. Plaintiff has access by water at all times to his property which is situated on a river near it, entrance into a lake, if the waters are free from obstruction, but the erection of a wharf in the river and lake by defendant who has no riparian rights at that point, would, on account of the lake water

freezing in winter, prevent access from the river, and also tend to cause the river to freeze in winter, further impeding plaintiff's access to his property. *Held*, that the injury to plaintiff's riparian rights entitled him to enjoin the erection of the wharf and to have removed any part thereof already erected.

From Klamath: HENRY L. BENSON, Judge.

Statement by MR. JUSTICE KING.

This is a suit by C. T. Oliver and the Mitchell, Lewis & Staver Company, a corporation, against the Klamath Lake Navigation Company, a corporation, and G. H. Woodbury to enjoin the construction of a dock or wharf between plaintiff's property and Link River, the construction of which, it is asserted, will materially interfere with the access to and from such river to plaintiff Oliver's property, to his injury and damage. Mitchell, Lewis & Staver Company's interest herein is that of a mortgagee only, for which reason Oliver will be treated herein as the sole plaintiff and referred to as such. Woodbury has no interest in the suit, and the cause, by consent, was at the trial dismissed as to him, leaving the Klamath Lake Navigation Company the sole defendant.

Link River has its source in upper Klamath Lake, and flows in a southerly direction into lower Klamath Lake. For a distance of about one mile from its source, it is known as Link River, and for the next two miles or more as Ewauna Lake, for which distance it will average about three-fourths of a mile in width, after which, and until it reaches lower Klamath Lake, it is designated as Klamath River. The town of Klamath Falls is situated upon and adjacent to the east bank of Link River, and on the north banks of Ewauna Lake, at the juncture of the lake and river, which river and lake are conceded to be navigable. It appears that in the early '70's George Nurse was owner of all the uplands and lowlands along Link River and Ewauna Lake in the vicinity of, and including, what is now the town of Klamath Falls, which town was platted by him in the usual manner into lots, blocks, streets, and alleys, and that defendant, through mesne conveyances, became the owner

of the south half of lot 1, and all of lots 2 and 3, in
block 27; thence east to, and including, 11 feet in width
by 60 feet in length, off the southwesterly portion of
block 28, all situated north of Klamath street, and border-
ing upon, and extending into, the water on the east side
of the channel of Link River, at the junction of the mouth
of the river with what is called "Ewauna Lake." Accord-
ing to the averments of the complaint and findings of
the trial court, which findings are amply sustained by
the evidence, plaintiff Oliver, through mesne conveyances,
became the owner of a tract of land south of Klamath
street, described as follows:

"Commencing at the point of intersection of the east-
erly line of Payne alley, extending southerly, with the
southerly line of Klamath street, in said City of Klamath
Falls, Klamath County, Oregon; thence westerly, along
the southerly line of said Klamath street, 220 feet; thence
southeasterly to a point in said extended easterly line
of Payne alley, 200 feet distant from said south line
of said Klamath street; thence northwesterly to the place
of commencement."

This makes a triangular tract of land immediately
south of, and adjoining, Klamath street, and situated
upon the northwesterly part of Lake Ewauna at its junc-
tion with Link River. For many years there has been a
building upon this property, known as the "Oliver barn,"
which was used for keeping live stock until within about
two years before the institution of this suit, since which
time Oliver has resided there, and used the principal
part of the building for warehouse purposes. He had
partly constructed a wharf on the west side thereof
between the building and the river, to be used for ship-
ping purposes, when the defendant company, beginning
upon the west end of the line of its property, where
defendant's property joins the north line of Klamath
street, adjacent to, and between Oliver's wharf and the
river, commenced the construction of a wharf or dock
143 feet in width, which extended at right angles there-

54 Or.——4

from into the water a distance of 165 feet on the west side, and on the east side thereof for a distance of 160 feet, thereby extending across and beyond Klamath street, a distance of about 100 feet, along the east side of Link River, and on and into the west side of Ewauna Lake at its juncture with the river, and to that extent constitutes an obstruction to plaintiff's egress to and ingress from Link River. The testimony adduced discloses that the lake immediately south of plaintiff's property freezes during the larger part of each winter, and that, if the obstruction complained of is permitted, free access to and from plaintiff's property to the river will be materially impeded.

The trial court entered a decree dismissing the suit on the grounds that plaintiff was not injured by the obstruction, and accordingly in no position to complain, from which plaintiff appeals.

REVERSED: DECREE RENDERED.

For appellant there was a brief and an oral argument by *Mr. J. C. Rutenic.*

For respondent there was a brief over the names of *Mr. Pierce Evans* and *Messrs. Noland & Smith,* with an oral argument by *Mr. Richard S. Smith.*

MR. JUSTICE KING delivered the opinion of the court.

But two points of law appear to be involved in this controversy, namely: Has the defendant a right as a matter of law to place a wharf in the river or lake, as the case may be; and, if not, can plaintiff maintain a suit to enjoin such obstruction?

1. We think it clearly appears from the testimony adduced that defendant only purchased the property north of Klamath street, and that it is not the owner of any realty south thereof. That this is the legal effect of the conveyances through which it appears the company deraigns title, as well as that it cannot, as a matter of law, insist upon the right to place the wharf or other

obstruction in the river or lake, we think settled by this court adversely to defendant's contention in *Grant* v. *Oregon Nav. Co.*, 49 Or. 324 (90 Pac. 178, 1099). It is there held that the grantee's rights are circumscribed by the description in the deed, of which the town plat from which the description is taken, and to which reference is made, became a part; and that it is within the power of any grantor to sell his riparian rights separately from the lands to which appurtenant, or in making a conveyance of such realty, expressly or impliedly, to reserve such riparian rights, in reference to which the conveyances through which defendant deraigns title specifically describe the property by lots and blocks. This necessarily separated therefrom any riparian rights south of that street, leaving such riparian rights the property of the original grantor and his successors in interest. To the same effect are *Potomac Steamboat Co.* v. *Upper Potomac Steamboat Co.*, 109 U. S. 672 (3 Sup. Ct. 445: 4 Sup. Ct. 15: 27 L. Ed. 1070) ; *Morris* v. *United States*, 174 U. S. 196 (19 Sup. Ct. 649: 43 L. Ed. 946) ; *Goodsell* v. *Lawson*, 42 Md. 348; *Gilbert* v. *Emerson*, 60 Minn. 62 (61 N. W. 820) ; *Kenyon* v. *Knipe*, 2 Wash. 394 (27 Pac. 227: 13 L. R. A. 142).

2. As to the second question, it is well settled that impediments to navigation, unless authorized by some competent power, or by some legal right of the person causing it, are nuisances, and the person causing an obstruction of that character is liable to the person injured, and may, by a suit in equity, brought for the purpose by the person specially injured thereby, be enjoined from placing such obstruction therein; or, in the event the obstruction, or any part thereof, is completed, may have the same abated. 21 Am. & Eng. Enc. Law (2 ed.) 444; *Fleischner* v. *Investment Co.*, 25 Or. 119 (35 Pac. 174) ; *Blagen* v. *Smith*, 34 Or. 394 (56 Pac. 292: 44 L. R. A. 522) ; *Union Power Co.* v. *Lichty,* 42 Or. 563 (71 Pac. 1044) ; *Morton* v. *Oregon Short Line*

*Ry. Co.*, 48 Or. 444 (87 Pac. 151, 1046: 7 L. R. A. [N. S.] 344: 120 Am. St. Rep. 827) ; *Kamm* v, *Normand*, 50 Or. 9, 15 (91 Pac. 448: 11 L. R. A. [N. S.] 290) ; *Garitee* v. *M. & C. C. of Baltimore*, 53 Md. 422. The case of *Morton* v. *Oregon Short Line Ry. Co.*, above cited, so far as the legal principles applicable are concerned, is similar to the one at bar. There the defendant company attempted, with permission of the owner of the adjacent land, to construct a jetty into Snake River, deflecting its course to the injury of Morton, a riparian proprietor below, which proprietor brought suit to enjoin any further extension of the jetty, praying a removal of the part completed, which was denied by the trial court, but granted on appeal. The question as to the navigability of the stream was raised in that case, but not determined. However, Snake River in the vicinity of the point on the stream there involved, has since been held by the Supreme Court of Idaho to be a navigable stream. *Moss* v. *Ramey*, 14 Idaho, 598 (95 Pac. 513) ; *Johnson* v. *Johnson*, 14 Idaho, 516 (95 Pac. 499).

3. In the case under consideration it conclusively appears that defendant company has no right, by reason of its ownership of the land north of Klamath street or elsewhere, to extend the wharf over the place in dispute, with reference to which it is, in effect, urged that it was done with the consent of the state and public in general, and that plaintiff was not injured, and accordingly has no right to complain. If defendant were a riparian owner to any part of the stream or lake south of Klamath street, and thereby entitled to wharf privileges, and the point were raised as to the extent of such right, a different question would be presented, making it necessary under such circumstances to determine the wharf rights and privileges of each of the contestants and ascertain in connection therewith whether plaintiff's rights in that respect extend at right angles to the thread of the stream, as held in *Montgomery* v. *Shaver*, 40 Or.

244 (66 Pac. 923), or in the manner determined in *Columbia Land Co.* v. *Van Dusen I. Co.,* 50 Or. 59 (91 Pac. 469: 11 L. R. A. [N. S.] 287), or at right angles to Lake Ewauna, if said lake is distinguishable from the river. But for the purposes of this case it can make no difference where the river ceases and the lake begins, for the navigability of each is conceded throughout, not only in the river and lake in general, but at the place covered by defendant's proposed wharf. In fact, the latter feature is shown by defendant's plat and data thereon, and it is unquestioned that in the natural condition of the lake and stream, plaintiff, at all times, has access to and from his property to Link River, while to permit the placing of the obstruction complained of between his warehouse and the main channel would, on account of the water south of the property, in what is called the lake, freezing during the winter months, prevent egress to and ingress from the river, while the water on the west between plaintiff's property and the river has at all times sufficient motion to prevent its freezing to such an extent as to impede navigation. It further appears that the obstruction complained of would naturally tend to check the current in the direction of plaintiff's property, and thereby materially increase the tendency of the water surrounding his premises to freeze, and correspondingly to obstruct his access to and from the river, which damage alone, to say nothing of the other features named, brings the case within the rule applied in *Morton* v. *Oregon Short Line Ry. Co.,* 48 Or. 444 (87 Pac. 151, 1046: 7 L. R. A. [N. S.] 344), where it was found that the jetty sought to be enjoined deflected the current in such manner as not only to wash away parts of plaintiff's lands, but reduce the current to such an extent as to interfere with the running of a ferryboat across the channel partly obstructed, at the same time leaving the channel in such condition that it was unfordable.

It follows that the decree of the lower court should be reversed and one entered enjoining defendant from placing any further obstructions in the stream or lake at the points indicated, and directing the removal within 90 days from the entry of the mandate herein of any part thereof placed therein; and it is so ordered.

REVERSED: DECREE RENDERED.

MR. JUSTICE MCBRIDE did not sit in this case.