## NOLAND v. PASTOR.

No. 14292.

United States Court of Appeals
Eighth Circuit.

Oct. 26, 1951.

1010

Edw. W. Fredrickson and William L. Mason, Jr., St. Louis, Mo., for appellant.

Will B. Dearing, Hillsboro, Mo. (Dearing & Matthes, Hillsboro, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

Charles Noland brought this action as plaintiff against William Pastor as defendant, to recover damages for personal injuries inflicted upon the plaintiff when he was walking across Cass Avenue at its intersection with Twenty-second Street in St. Louis, Missouri, and was struck and injured by a 1948 Plymouth automobile driven by the defendant. There was federal jurisdiction by reason of diversity of citizenship and amount involved. It was alleged in plaintiff's amended petition, among other things:

"Plaintiff further states that the defendant was then and there further negligent in this, to-wit: that defendant then and there saw, or in the exercise of the highest degree of care could have seen, the plaintiff in a position of imminent peril from the movement of defendant's vehicle, and that he was oblivious thereof, in time thereafter, and by the exercise of the highest degree of care, in the use of the means and instrumentalities at hand, and with safety to defendant, defendant's said vehicle, all persons, if any, riding within the said vehicle, and all other persons and vehicles, if any, then and there in the vicinity, to have avoided striking plaintiff with the defendant's said vehicle, and thereby have avoided injury to plaintiff, by stopping defendant's said vehicle, or by checking the speed of the same, or by turning the same away from plaintiff and away from the course being followed by plaintiff, or by

swerving defendant's said vehicle away from plaintiff, or by otherwise altering the direction and course of defendant's said vehicle away from plaintiff, or by sounding a timely warning of the approach and proximity of defendant's said vehicle; but that nonetheless, defendant failed to exercise the highest degree of care in any of the particulars aforesaid, after he saw, or in the exercise of the highest degree of care could have seen, the perilous position of plaintiff as aforesaid."

Defendant answered by admitting the occurrence of an accident and by general denial, and alleged that plaintiff's contributory negligence was the cause of the accident and that "Plaintiff stepped and walked in close proximity to approaching automobiles and in particular the automobile of defendant, when he saw or by the exercise of ordinary care could have seen the approaching automobile in time to have avoided stepping and walking into the said automobile."

On the trial of the case to court and jury, plaintiff adduced evidence, including his own testimony, photographs of the scene of his accident, admissions then made by defendant and statements offered from a deposition given by defendant tending to show that: At about 1:15 o'clock in the morning of September 11, 1949, with the streets dry and the weather favorable, there being no rain, snow or fog, the plaintiff, a man of 63 years of age, started to cross Cass Avenue, an open public street in the City of St. Louis, from north to south starting at the northwest corner of the intersection of Cass Avenue and Twenty-second Street. He left the curb and got out in the street about five or six feet, looked in both directions and saw no automobile or people around; he then started walking on across the street at a normal walk and after looking the first time did not again look to his right as he was looking to the east or to his left with his head turned looking to the east. When he got in about the center of Cass Avenue, which is 50 feet wide, he was struck. The next thing he remembers was that he was in an ambulance on the way to the hospital. Prior to the accident he did not hear any horn or warning sounded, and did not hear any sound of brakes or noise of any kind; there was nothing wrong with his hearing. The defendant was driving his automobile about 30 miles an hour eastwardly on Cass Avenue with his lights on; his car was equipped with four-wheel hydraulic brakes in good condition and other mechanical features of his car were in good shape, including his horn, but defendant did not at any time sound his horn or any warning before the accident occurred nor did he swerve or change the course of his car. He saw "the back" of plaintiff when plaintiff was just about on the center line of Cass Avenue "if there was a center line there." Defendant's automobile hit plaintiff with the front bumper about ten inches from the left end and with sufficient force to make a mark on the bumper at that place. From the testimony given by defendant in his deposition it appears that he saw the plaintiff before striking him with the automobile but only for a short time prior to the impact, which time was not long enough for defendant to sound the horn or any other warning or to swerve or change the course of his car prior to the impact. Had a horn or any warning been sounded there was nothing that would have prevented plaintiff from stopping or stepping back as he walked south across Cass Avenue.

At the close of plaintiff's evidence the defendant moved for a directed verdict on the grounds that plaintiff was chargeable with contributory negligence and that his evidence was insufficient to show any actionable negligence on the part of defendant and failed to establish that after plaintiff became in a position of imminent peril the defendant could by exercise of the highest degree of care have seen plaintiff in time to have stopped, swerved or sounded a signal or warning and thereby have avoided striking plaintiff. This motion was sustained by the court and the jury under the court's direction returned a verdict for defendant upon which judgment of dismissal was entered from which this appeal is taken by the plaintiff.

He asserted that he had pleaded and his testimony made out a submissible case against defendant under the Missouri hu-

manitarian doctrine, which is the law applicable to the case, and that the court erred in granting the motion for directed verdict.

█ Both parties here recognize that the elements of the Missouri law embodying the doctrine are as stated by the Supreme Court of Missouri (en banc) in the case of Banks v. Morris & Co., 302 Mo. 254, 267, 257 S.W. 482, 484, in the following formula: " '(1) Plaintiff was in a position of peril; (2) defendant had notice thereof (if it was the duty of defendant to have been on the lookout, constructive notice suffices); (3) defendant after receiving such notice had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others; (4) he failed to exercise ordinary care [1] to avert such impending injury; and (5) by reason thereof plaintiff was injured.' "

Noland's contentions for reversal which he urges here in view of the admitted fact that defendant struck him with the front bumper of his automobile and so injured him, are that his evidence met the requirements of the quoted Missouri law in that (1) it showed that he was in a position of peril; (2) of which defendant had constructive notice, and that (3) after defendant should have seen plaintiff defendant could have avoided injuring him but instead of that (4) failed to exercise the care required by law, and (5) so injured the plaintiff.

In answer to these contentions the appellee says in his brief, "We must agree that at some time before the plaintiff crossed the center of Cass Avenue and stepped into the path of the east bound automobile being operated by appellee that appellant did become in a position of imminent peril" but he argues that "the driver of the automobile was not required to take any affirmative action while the appellant was approaching such position of peril or upon a showing of a mere possibility that appellant would go into a position of imminent peril." Appellee's position is that

it was properly held as a matter of law that the plaintiff's evidence showed merely such approaching a position of peril or mere possibility of going into such position that no affirmative action for his protection was called for on the part of the driver and therefore his driving his car against plaintiff was not actionable.

█ The point for our decision here is therefore a very narrow one. It does not include consideration of whether the plaintiff was as alert and careful of his own safety as a pedestrian crossing a city street at an intersection at about one o'clock in the morning ought to be. If the case were one in which contributory negligence of the plaintiff constituted a complete defense it may be that plaintiff would be precluded from recovery on his showing that he walked out into the middle of the street and the defendant's automobile came bearing down on him with good headlights and that there was no obstruction to the view and that he had his head turned looking the other way and so remained unconscious of its approach and was struck. But under the applicable Missouri law called the "humanitarian doctrine", any question as to such contributory negligence of plaintiff is irrelevant, Clifford v. Pitcairn, 345 Mo. 60, 131 S.W.2d 508, and our question is narrowed down to whether reasonable men might not honestly believe that the defendant when he was driving on Cass Avenue and approaching the Twenty-second Street intersection at thirty miles an hour, could and should have seen a pedestrian walking at a normal gait directly into the path of defendant's oncoming automobile from the curb to the middle of the street, in time to do something to save him from injury if the driver had been using the highest degree of care in the operation of his car required of him by the Missouri law. There was no obstruction on the street between the defendant and the plaintiff and the headlights on defendant's car were in good shape, according to his testimony. Under the Missouri Statute it was required

---

1. RSMo 1949, § 304.010.

"304.010. Manner of operation of motor vehicles.—Every person operating a motor vehicle on the highways of this state shall drive the same in a careful and prudent manner, and shall exercise the highest degree of care, * * *".

that they reveal a person at a distance of at least 100 feet ahead, RSMo1949, § 304.350, and it may not be assumed, in view of his testimony, that they were below legal requirements. If defendant had been keeping a sharp lookout ahead of him as he approached the intersection, as he is by law required to do, would he not have seen the plaintiff and would he not have noticed that plaintiff's head was turned looking in the opposite direction, and that plaintiff was walking directly into the path of defendant's car, oblivious of its approach? The plaintiff's evidence is that such was the situation, and if it was, the lights revealed it as soon as they came within 100 feet of it. A man may be held to see what looking reveals, Weis v. Melvin, Mo.Sup., 219 S.W.2d 310. That a driver going thirty miles an hour can make a swerve of more than ten inches and can sound a horn, or even apply brakes and stop within a much shorter distance than 100 feet, is a matter of such common knowledge as to be obvious. The court must take judicial notice of it. Mills v. Denver Tramway Corp., 10 Cir., 155 F.2d 808, loc. cit. 811.

We think the answer to the question plainly is that reasonable men could honestly infer that if defendant had used the highest degree of care he could have seen the plaintiff in peril in time to have acted to save him and that the case was for the jury under the applicable Missouri law.

In support of his contention that the situation presented by plaintiff's testimony did not call for any affirmative action on defendant's part under the applicable Missouri doctrine, defendant has cited in addition to Banks v. Morris & Co., supra, upon which both parties rely, the following Missouri cases: Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S.W.2d 961; Blaser v. Coleman, 358 Mo. 157, 213 S.W.2d 420; Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495; and Hendrick v. Kurn, 352 Mo. 848, 179 S.W.2d 717, which have been considered. They all relate to and discuss the Missouri humanitarian rule, but none has to do with its application to situations in anywise comparable to that of the case at bar where a pedestrian on a city street

intersection has there been run down by a motorist after being in view of the motorist during at least 100 feet of the motorist's travel. We think the following Missouri cases cited for appellant support his contention that the case made out by his evidence was for the jury: Teague v. Plaza Express Co., 354 Mo. 582, 190 S.W.2d 254; Johnson v. Hurck Delivery Service, 353 Mo. 1207, 187 S.W.2d 200; Hornbuckle v. McCarty, 295 Mo. 162, 243 S.W. 327, 25 A.L.R. 1508; Weis v. Melvin, Mo.Sup., 219 S.W. 2d 310.

In Tyler v. Starke, 76 U.S.App.D.C. 42, 128 F.2d 611, it appeared that the plaintiff in an action for damages against a motorist started to walk across a city street in the middle of the block about one o'clock in the morning and saw the headlights of a car approaching about 245 feet away but figured she had time to cross before it reached her "and that at a 'faster than normal walk', but without again looking, she continued across the street to a point about 9 feet from the west curb, where she was struck." The street was 45 feet wide. The plaintiff was clearly negligent and the trial court dismissed her case on that account, but the Court of Appeals reversed and said, among other things, 128 F.2d 611, loc.cit. 612, that it was a question for the jury "whether, in the exercise of reasonable care, he [the motorist] should have seen the woman's danger and her obliviousness to it sooner and slowed down or blown his horn". We are not cited to any case in Missouri which appears to us to support the appellee's contention here that the plaintiff as a matter of law was not in imminent peril when he was in proximity to and walking towards the path of the oncoming automobile oblivious of its approach. Nor the contention that appellee was not negligent in failing to see and take action against the peril. We hold the case was for the jury.

Reversed and remanded for trial.

GARDNER, Chief Judge.

I concur in the result. In my view the only evidence warranting the submission of the case to a jury was the evidence to the effect that plaintiff as he approached the

center of the street was looking in the opposite direction from defendant's approaching car. A jury might find that the defendant should have observed this fact indicating that plaintiff was oblivious to defendant's approaching car, thus evidencing a fixed purpose on the part of plaintiff to pass into the path of danger. If, after he made, or in the exercise of proper care should have made, such discovery, defendant could reasonably have avoided the accident, then it was his duty to do so and liability would attach. Teague v. Plaza Express Co., 354 Mo. 582, 190 S.W.2d 254.